The next and final argument this morning is in Appeal No. 06-3180, Letz v. Department of Interior. Mr. James, good morning. Welcome back. You seem to have a number of clients from the same profession, so we're always glad to see you and Mr. Carpenter and others who appear repeatedly on behalf of various individual clients. It's amazing to me the number of wrinkles in what is otherwise settled law. That's amazing to some of us, too. Please proceed. Thank you. As the Court appreciates, by stipulation the only issue in this case is the agency's timeliness defense as asserted. In assessing the merits of that timeliness defense, really the Court is asked to do two things. First, provide guidance in terms of the language, significant change in a position, which we find in Section 804C of the FERS regulations. That is to say, does in this case a decision by the agency impacting enhanced immunity retirement as a federal firefighter effect a significant change in a position, or does it not? Mr. Letz submitted his first and only application for Leo benefits in 97, right? That's correct. Why nothing more as coverage determinations happen in the years that follow as things change and six-month deadlines expire one after another based on nothing happens because wisely or improvidently he relied upon his manager's representation, so it was set out in the transcript and hearing and included in the briefing, to the effect that his positions as he began his career at Grand Canyon National Park either had been or would be submitted for coverage. Ultimately, then, it was that same supervisor who said now, today, January 17, if my memory serves me, of 1996, 97, I apologize, you will at record speed assemble the paperwork necessary for those position coverages, which I've been representing. Those are for the positions that would precede that, right? Correct. And then afterwards he has a multitude of coverage determinations with six-month deadlines that expire in 98 and 99 and 2000 and 2002 and 2003, and he does nothing. There's two pieces to that. First, there is the notice provided by the agency which advised him of a January 20, 1999 decision affecting the retirement creditability of the positions he held from 97 to 99. It was at that point, you'll recall, that he hired counsel, our firm did the necessary investigation, and discovered the earlier position coverage determination about which the agency had not advised my client. So upon having notice of the coverage determination, and ultimately it's second coverage determination, he did do what I think is contemplated by the statute, by the federal, the applicable regulations for CSRS. I thought the way the scheme worked was that the person who felt that he was entitled to these extra benefits and credits toward the early retirement and the higher pension and so forth had to apply for it, and that if he applied for it and it was denied, then he had a right to appeal. That's true. And to exercise that right to appeal, he had to do it within a fixed timeline, and now Judge Rader pointed out that every time your client applied for something and lost, he had a new six-month appeal period, but in each case he never filed within six months. So why isn't that the end of the case? I may have misunderstood Judge Rader's question a moment ago. The only application my client made, if you want to view it that way, was the 1997 documentation. Our firm made, on his behalf, an application once the January 20, 1999, notice was given to Mr. Letts. Yeah, but maybe you're missing my point. What the agency does on its own motion seems to me to be separate from the rights of the employee when he has applied for LEO benefits, and isn't it correct, as Judge Rader suggested, that every time that he could have applied for, or did apply for benefits, he failed to appeal a negative result within six months? I would disagree with your word choice. Each time he went into a new position, and he went into several of them, he did not make application for coverage determination in those positions, but there was no denial. Well, of course not, because he didn't apply. But it seems like his rights are, you can apply if you want to apply, and if you apply but lose, you can appeal if you do it fast enough. Now, in several cases he didn't apply, and in one case he appealed too late. He appealed too late because he didn't know of the decision until he ultimately then appealed. That was the process. Yeah, but that was not a decision on his application. That was the agency acting on its own. Well, it's not clear in the record whether that was the agency acting on its own or not, and the reason I say that is because, as Judge Rader said, I'm talking, there was instruction to my client to put together the paperwork in January of 1997 to obtain the position coverage for positions which he had previously helped. That, as you'll see in the record, seems to be treated by the agency at different points in time as an individual request made by Mr. Letts, and ultimately a coverage request made by the National Park Service to the Department of Interior for a decision. It was both. I'm not clear today which it was, but I do know that my client was the one who was instructed in January of 1997 to put together the necessary paperwork, the certifications that are in the record, to either obtain the position coverage or not. Upon that position coverage having been determined, this CSRS and FERS handbook, among other things, says specifically you need to have a written decision, the employee has a right to appeal, and so on. Those things didn't happen. Why do we care about the handbook? The handbook is not law. The regulations are law, the statute is law, the decisions of this court are law, the handbook is not law. And his supervisor's instructions are law, nor are they changes in positions to which he can or must respond. I understand. And that they're kind of, they're explanatory, but they're legally irrelevant. It seems to me, like the statement of a memorandum of understanding that the agency actually generated in 1999 and required my client to sign off with the second of the two coverage determinations. The agency makes representations in the context of things like the CSRS and FERS handbook as to how they will treat these matters. And in fact, how they do treat these matters in the context of the second position coverage determination, not the first. And if not held as a matter of law, they certainly have committed to their employee pool that that's how they're going to deal with these things. This is not a breach of contract case. I understand. This is not an equitable case where we're saying, well, we're going to make the agency live by its handbook or they lose. This is a straight law case, I think. And what is the significant change in position? The significant change in position is the post facto adjudication of coverage twice made in this case. The first without any notice to my client of the decision having been made, and the second with the notice... That has to do with benefits, not with the job. We just... If I'm a truck driver and then I change and become a neurosurgeon, those are two different jobs. It makes no difference whether I have benefits in the one or the other. There was a change in the job when I made that shift. But by law and regulation, retirement benefits are recognized to be something more significant than changing health benefits, for example, and some of the lesser items. It may be, but they don't change the position under any authority that I'm aware of. The way you change the position is you change the job description, you change the job title, you have somebody do something totally different, in fact, than what their job description or position title implies. But it has nothing to do with whether benefit credits are being given or not being given. Okay. First, just as an administrative matter, a position coverage determination does change the position description, and there's an expressing annotation that goes with that, because it's a significant component of this career. That's the issue. I'm doubting that any benefit change, including an LEO-related benefit change, is a change in a position. Well, and quite candidly, I'm not standing here today suggesting this is a rhetorical... How does the retirement coverage of a position change the position? It changes the position because... Not benefits attached thereto, isn't it? I think it's consistent with, it's integral to Congress's very notion of these being career positions. That is to say, this is the kind of benefit that are offered to particular kinds of persons in high-risk employment. We want young, vital people so that they'll stay and make these to keep them in the career. That's, I think, how it all fits together. The other thing, and I need to say this quickly in response to your earlier question, both Judge Michelle and Judge Rader, because my client didn't, within any six-month period after he entered one of these positions, file a claim is not preclusive. There is nothing, there is no law that suggests that the other alternative element of the definition, or a significant change in a position, doesn't equally apply. That is to say, there's not, it's not a use it or lose it in each position if you don't apply within the first six months. It's if you don't apply within the first six months, or if you don't apply when there's a significant change in the position. It's for that reason that there's significant... deadline attached to the significant change in position. I'm missing your point. Help me. It's framed in the alternative, Your Honor. That is to say, the employee may make the claim within six months of entering into the position, or, and that's the operative notion, or within six months of a significant change in the position. Now, I make a leap there because the second phrase does not include the word six months, but I think fairly it's read into it. The point is, there are two windows potentially available in each assignment. One is in the first six months, and one is when and if there's a significant change in the position. And again, I suggest that the retirement benefits, which are so integral... I think your argument is very clear. Thank you. Appreciate it. All right. You might want to save some time for rebuttal. I do, and I think I'm at that point, Your Honor. Very well. Thank you. Miss Kidd-Miller. Good morning. Welcome. I observed that we've had three cases where the respondent was the United States this morning in front of this particular panel, and in each and every one of the three cases, the government has been represented by a lady lawyer. So times have changed. Welcome. Please proceed. Thank you. May it please the court. As Mr. James concedes, the only question for this court today is the timeliness of Mr. Lutz's application for benefits. Mr. Lutz missed no less than six separate opportunities to timely file a claim for benefits. The Department of the Interior correctly determined that his application had not been timely filed, and that determination is entitled to a presumption of correctness. Mr. Lutz attempts to rebut that presumption by arguing that Mr. Lutz was prevented by some causes beyond his control. Let me first, though, back up a step and look at the question whether Mr. Lutz's application was, in fact, timely submitted. As Mr. Lutz sets forth in his opening brief, there were three distinct deadlines that would have allowed Mr. Lutz to have a timely filing, the first being within six months of entering any position that was not covered, the second being a one-time November 1st, 1995 deadline, and then the third being within six months of any significant change in the position. Of course, the significant change point is the one that is at issue here today. As this court pointed out with its questions earlier, the significant change does refer to a significant change in the position. How do we know? Well, we have that from several sources. Let me first point to this court's decision in the case of Bingaman, a 1997 decision. Now, admittedly, this court did not ultimately have to define exactly what the significant change was. In that case, the question was. Well, then why is Bingaman of any use? It has a useful observation. Is that a little casual dicta thrown in there somewhere? We're supposed to follow that? In that case, the question was whether an employee's promotion was a significant change in the position. The court determined that the employee was not covered prior to his promotion. Then decided it was not necessary to go on and determine whether there were any different responsibilities that came about because of that promotion. So the commentary about change of position was entirely dicta? Yes, Your Honor. That's your best authority is some dicta in a case called Bingaman? No, Your Honor. Why don't you give us your best authority? Why don't you specifically state significant change in the position? Yeah, but that's not self-defining. He says the change in the position includes whether it gets certain benefits or doesn't get certain benefits. You say no, it doesn't. You say change of position means change in the duties of the position. But the regulation doesn't say change in the duties of the position. It just says change in the position. So we have to look outside the regulation to know what that means. Now, if we don't get much help from Peterson, where do we get help? If I may clarify, the argument is not that it is only a significant change in the duties of the position. The other things related to the position could change and potentially be a significant change. The more important point is that... Like what? What other things are you alluding to? If something in the position description changed, which would then have an impact on whether the employee is doing the type of firefighting... What's the difference between that and duties? Well, they're admittedly very similar. Mr. James argues that the position description was in fact changed because it was changed to include the LEO credit, the firefighter credit. Perhaps to be helpful, I'd like to point to the basic purpose of the significant change in the position allowance, that the whole reason there's a new deadline... If you thought you'd received additional benefits, you'd expect that there'd be additional withholding, wouldn't you? Yes, more money coming out of your check. There's one thing we all look at, and that's what's happening to our money, right? Right, Your Honor. Did that happen here? No, Your Honor. First, for a factual reason, the coverage decisions that Mr. Letts is referring to here cover positions that he was no longer encumbering at the time. He was in a separate position receiving a paycheck completely apart from the 1998 coverage decision. For that additional reason, that coverage decision did not have an impact on any of his duties, any of his work, anything vis-a-vis Mr. Letts and that position during the time... And this has got to be a significant change, doesn't it? Yes, Your Honor. Not just a change of any kind. It's got to be significant change. Yes, Your Honor. What do you attach to that word significant? What is the meaning you would give to that? We don't have any controlling case law on that. We just went over that. The best thing you could find was dicta, so we really don't know what a significant change in position is. What would you say? I'd say at a minimum, it would need to have some impact related to the firefighter or law enforcement officer portion of the employee's position. The purpose of the statute... He's got to jump out of airplanes? Not necessarily, but should be doing some sort of work that would then entitle him to this additional benefit. The significant change in the position provision allows the agency to take a second look at an employee at a position when that type of change has occurred. That is the type of change that is related to the work that the employee is doing. How do we know this? You don't set any regulatory history here, so how do we know what the reg writer intended here? Other than from Peterson, the dicta and Peterson. I'm sorry. I'm happy to address Peterson if her like. We have other board decisions. Admittedly, this court is not bound by board decisions, but the board has had more opportunities to look at this question and time again, when it does look at the question, examines this very type of duty, work related factors. What's the board holding that you think most strongly supports your notion of what significant change in position means? Probably the Fitzgerald case, your honor. It's a 1998 decision from the board at 80 MSPR 20. In that case, the board said that a within grade increase or performance award as reflected on an employee's SF 50 was not a significant change. In that case, there were some petitioners who were in a covered position for the first six months after entering that speaking to the purpose for which Mr. Letts cites this case. The agency then made the opposite coverage decision from what is at issue in this case. The agency decided that employees who had been covered no longer would be covered, and accordingly, the board determined that the six month provision should not be applied to those employees because it would be nonsensical. They were in a covered position for the first six months. But a different set of petitioners in that case had the within grade increase and performance awards, and again, that was not a significant change, not related to the work that the employees were doing. Accordingly, Mr. Letts failed to timely file for benefits. Therefore, the department's decision that his application was not timely filed is entitled. What if my grade changed? Pardon me? What if my grade changed? I was promoted to a higher grade, not a within grade increase like Fitzgerald, but a higher grade. I used to be a forest ranger 10, and now I'm a forest ranger 11. Is that a significant change in position? It would depend on whether anything about the employee's duties changed in connection with that increase, and that's what the Fitzgerald court was explaining. So only a change in duties qualifies as significant? Or some other change in the type of work. My jump out of airplanes really isn't facetious, is it? You really need to show something of that nature. Yes, maybe not necessarily. I understand that that particular hypothetical is not necessary, but yes. All right. Well, if you're right, then the government has to win. It's very simple. And I think you've explained clearly why you think that you're right as to what is or is not a significant change in position as intended by the right. If I may raise one point with relation to Mr. Lex's... Well, a Leo position is there because there's some danger or hazard which reduces the time that a person can serve in that position. Would a significant change be linked thus to those hazardous, dangerous duties requiring physical fitness, all of the factors we have factored into our earlier Leo decisions? Yes, Your Honor. There are really two interests of the agency at stake here. The first, as you've just pointed out, is to ensure that there's a young, physically vigorous workforce in positions that require that kind of workforce. I'll give you a hypothetical that maybe will illustrate what I think you're trying to say. Suppose that my position is described as a radio technician. And suppose that normally I'm doing radio work well behind the fire line at some base camp, five or ten miles away. And then I'm assigned instead to actually go up to the fire line and go along the fire line and hand out walkie-talkies to each of the guys up there with their pickaxes and buckets and whatever else they have fighting the fire. My position title hasn't changed and my duties maintain and hand out radio equipment haven't changed, but the location has changed in a way that hugely increases the danger, as Judge Rader points out. Yes, Your Honor. That may be a significant change in the position. Yes, Your Honor. Okay, anything further? Just briefly, Your Honor. As the Court has pointed out, the first handbook is in fact not law, but the provision of the handbook Mr. Lett cites does track the statutory requirements of 804C and pertain to an individual's written formal application for coverage. Finally, I really hesitate to raise something that the Court has not had questions about, but I don't want the Court to be confused. Are you responding to an argument he made here or are you bringing up something extraneous to his oral argument? Extraneous, Your Honor. I think it's out of order in that case. We have the briefs. Very good. Mr. James, two minutes. It's my goal to leave time on the table. My only comment is this. In trying to assess whether a coverage determination of the sort made in this case is a significant event or not, recognize that the language at issue is found within federal regulations governing law enforcement and firefighter retirement. No question about that. And what could be more significant than the change of the retirement? I think you almost are reading inexorably. The answer is Judge Rader's point, change in degree of danger or hazard. That's our choice. That's what it comes down to. And it's the reason that all of the positions are being covered, because they are hazardous. They do require young and vigorous persons and so on. Thank you. Thank you both. We'll take the case under advisement.